___

**SO ORDERED,**

*/s/ Neil P. Olack*

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: March 27, 2015**

The Order of the Court is set forth below. The docket reflects the date entered.
___

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:

    ANTHONY D. JOHNSON,                                      CASE NO. 15-00104-NPO

    DEBTOR.                                                                     CHAPTER 13

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

This matter came before the Court for hearing on February 23, 2015 (the "Hearing") on the Motion for Relief from the Automatic Stay (the "Motion for Relief") (Dkt. 11) filed by Coastal Truck & Equipment Rentals, LLC ("CTE") and the Debtor's Answer to the Motion to Lift Automatic Stay Filed Herein By Coastal Truck & Equipment Rentals (the "Response") (Dkt. 18) filed by Anthony D. Johnson (the "Debtor") in the above-styled bankruptcy case (the "Bankruptcy Case"). At the Hearing, Reed Bennett appeared on behalf of CTE, and L. Jackson Lazarus appeared on behalf of the Debtor. The Court, being fully advised in the premises, finds that the Motion for Relief should be granted for the reasons that follow.

## Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this case pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G). Notice of the Motion for Relief was proper under the circumstances.

## Facts

1. On January 23, 2014, the Debtor entered into a "Commercial Truck Rental Agreement" (the "Agreement") (CTE Ex. 1)[1] with CTE in which the Debtor agreed to "rent" one (1) 2001 Freightliner, Classic XL, VIN: 1FUJCLAV31LF91296 (the "Freightliner") from CTE in exchange for 208 weekly payments of $515.00. The Agreement reflects that the Debtor paid CTE a refundable deposit of $5,000.00. (CTE Ex. 1 at 1 & 2). The Agreement also includes a "*Truck Purchase Option*" that could be exercised by the Debtor for a sum of $8,500.00 after he finished making the 208 weekly payments under the Agreement.[2] In addition, the Agreement requires the Debtor to provide written notice of his intent to exercise the purchase option to CTE at least sixty (60) days prior to exercising the option. (*Id.* 1 at 8). The Agreement further provides that CTE could terminate the Agreement at its discretion for the Debtor's failure to comply with the terms of the Agreement. (*Id.* at 2).

2. On October 22, 2014, CTE sent the Debtor a letter (the "Termination Letter") (CTE Ex. 2) notifying the Debtor that the Agreement was terminated due to the Debtor's defaults under the Agreement.

---

[1] Hereinafter, exhibits introduced into evidence at the Hearing by CTE are cited as "(CTE Ex. __)", and exhibits introduced into evidence at the Hearing by the Debtor are cited as "(Debtor Ex. __)".

[2] Specifically, the "*Truck Purchase Option*" provides that the purchase option may only be exercised after "[a]ll covenants of said Rental Agreement . . . have been faithfully performed." (CTE Ex. 1 at 8).

3. On December 10, 2014, CTE initiated a state court lawsuit by filing the Complaint and Affidavit in Replevin (the "Replevin Complaint") (CTE Ex. 3) in the Circuit Court of Harrison County, Mississippi (the "Circuit Court") at Cause No. A2401-14-322. (the "Replevin Action") In the Replevin Complaint, CTE argued that the Debtor owed more than $5,000.00 to CTE under the terms of the Agreement and requested the Circuit Court to order the Debtor to return the Freightliner to CTE.

4. On January 12, 2015, the Debtor filed a petition for relief (the "Petition") (Dkt. 1) pursuant to chapter 13 of the United States Bankruptcy Code.

5. On February 3, 2015, the Debtor filed his statements and schedules regarding his income, expenses, and creditors (the "Statements and Schedules") (Dkt. 13) and his Chapter 13 Plan (the "Plan") (Dkt. 15). In both the Statements and Schedules and the Plan, the Debtor identifies "Coastal Credit, LLC" as a creditor with a secured claim in the amount of $10,000.00. In the Plan, the Debtor proposes to retain the Freightliner and pay CTE the full amount owed on its claim plus 5.00% interest.

6. Also on February 3, 2015, CTE filed the Motion for Relief requesting the Court to terminate the automatic stay as to CTE and the Freightliner pursuant to 11 U.S.C. § 362(d)[3] and order the Debtor to reimburse CTE for all of the reasonable attorney's fees it has incurred in this matter.

7. The Debtor filed the Response on February 4, 2015.

8. At the Hearing, the Debtor testified that he entered into the Agreement with CTE and paid a deposit in the amount of $5,000.00. According to the Debtor, he was under the

---

[3] Hereinafter, all code sections refer to the United States Bankruptcy Code found at title 11 of the United States Code unless otherwise noted.

impression that he was purchasing, not renting, the Freightliner. The Debtor stated that he has paid a total of $10,000.00 to CTE under the terms of the Agreement, but that he stopped making payments to CTE under the terms of the Agreement, and, thus, was in default prior to October 22, 2014, the date of the Termination Letter. The Debtor also testified that he never provided CTE with written notice of his intent to exercise the purchase option in the Agreement. According to the Debtor, he somehow thought his weekly payments of $515.00 were being applied toward the $8,500.00 required to exercise the purchase option.[4] The Debtor introduced into evidence at the Hearing a copy of the title to the Freightliner. (the "Title") (Debtor Ex. 1). The Title shows that ownership of the Freightliner was transferred to CTE sometime after June 21, 2013. (Debtor Ex. 1 at 2). At the Hearing, CTE requested the Court to terminate the automatic stay to allow CTE to pursue the Replevin Action. The Debtor, on the other hand, asked the Court to allow him to exercise the purchase option under the Agreement through his Plan and treat CTE as a secured creditor in his Bankruptcy Case.

## Discussion

In the Motion for Relief, CTE argues that the Agreement is a rental agreement or lease and that the Debtor does not have an ownership interest in the Freightliner. CTE further argues that cause exists under § 362(d) for the Court to terminate the automatic stay to allow CTE to proceed with the Replevin Action. The Debtor contrarily argues that the Agreement constitutes a secured transaction and that he has an ownership interest in the Freightliner. Accordingly, the Debtor proposes to treat CTE as a secured creditor in the Plan. The parties' rights and interests, including how the Debtor may treat CTE's claim in the Plan, depend on whether the Agreement

---

[4] It is clear from the Debtor's testimony that he was uncertain about the terms and nature of the Agreement.

is a "true" lease or a secured transaction. Thus, the Court will first determine the nature of the Agreement before addressing the merits of the Motion for Relief.

**A.       "True" Lease vs. Secured Transaction**

In determining whether a transaction is a "true" lease or a secured transaction, the Court must turn to applicable state commercial law. *Butner v. United States*, 440 U.S. 48, 55 (1979). Mississippi's version of the Uniform Commercial Code ("UCC") distinguishes between a "true" lease of personal property and a transaction that creates a security interest by application of MISS. CODE ANN. § 75-1-203. Specifically, subsection (b) of the statute contains a two-prong test that, if satisfied, necessitates the finding that the transaction in question has created a security interest as a matter of law, even if the agreement between the parties is in the form of a lease. This "bright-line" test is as follows:

> (b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:
>
> > (1) The original term of the lease is equal to or greater than the remaining economic life of the goods;
> >
> > (2) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
> >
> > (3) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
> >
> > (4) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

MISS. CODE ANN. § 75-1-203. Under the bright-line test, "a lease creates a security interest only if (1) the lessee does not have the right to terminate the lease; and (2) one of the four enumerated requirements . . . is satisfied." *Auto. Leasing Specialists, L.L.C. v. Little*, 392 B.R. 222, 234

(W.D. La. 2008) (quoting another source) (construing substantively identical provision of Louisiana commercial law).[5] If the bright-line test is not satisfied, then the transaction in question does not create a security interest *per se*. In that event, the Court then must examine the facts and circumstances of the transaction and determine whether the lessor retained a meaningful reversionary interest in the goods at the end of the lease term. *See In re Warne*, No. 09-13941, 2011 WL 1303425, at *4 (Bankr. D. Kan. Apr. 4, 2011); *Rentrak Corp. v. Ladieu (In re Ladieu)*, Ch. 7 Case No. 07-10868, Adv. No. 08-1010, 2011 WL 748566, at *12 (Bankr. D. Vt. Feb. 24, 2011); *In re Uni Imaging Holdings, LLC*, 423 B.R. 406, 416-17 (Bankr. N.D.N.Y. 2010); *In re WorldCom, Inc.*, 339 B.R. at 70-72; *In re Parker*, 363 B.R. 769, 774-76 (Bankr. D.S.C. 2006); *In re QDS Components, Inc.*, 292 B.R. 313, 333 (Bankr. S.D. Ohio 2002) (citing *In re Triplex Marine Maint., Inc.*, 258 B.R. 656, 669 (Bankr. E.D. Tex. 2000)); *see also* 4 JAMES J. WHITE, ROBERT S. SUMMERS & ROBERT A. HILLMAN, UNIFORM COMMERCIAL CODE § 30–3(c)(3)(d) (6th ed. 2012). The burden of proof is on the party attempting to characterize the transaction in question as something other than what it purports to be. *In re Uni Imaging Holdings, LLC*, 423 B.R. at 414. *In re Ecco Drilling Co., Ltd.*, 390 B.R. 221, 226 (Bankr. E.D. Tex. 2008); *In re QDS Components, Inc.*, 292 B.R. at 321-22. Here, the Debtor has the burden of proving that the Agreement is a secured transaction and not a lease.

1. **Application of the Bright-Line Test**

The first prong of the bright-line test is whether the Debtor has the right to terminate the Agreement prior to the expiration of its term. If the Debtor does have the right to terminate the

---

[5] While there are relatively few Mississippi cases that address the relevant provisions at hand, the UCC has been uniformly adopted. Thus, decisions from other jurisdictions interpreting the same uniform statute are instructive. *See Duke Energy Royal, LLC v. Pillowtex Corp. (In re Pillowtex, Inc.)*, 349 F.3d 711, 718 n.8 (3d Cir. 2003); *WorldCom, Inc. v. Gen. Electric Global Asset Mgmt. Servs. (In re WorldCom, Inc.)*, 339 B.R. 56, 63-64 (Bankr. S.D.N.Y. 2006).

Agreement early, then the transaction is not deemed to have conclusively created a security interest, and the Court need not proceed in the analysis of the four factors listed in MISS. CODE ANN. § 75-1-203(b), known as the "Residual Value Factors." If, however, the Debtor does not have right to terminate the Agreement early, the satisfaction of any one of the Residual Value Factors will result in the finding that the Agreement is a disguised secured transaction as a matter of law. MISS. CODE ANN. § 75-1-203(b).

While the Agreement does not address the scope of the Debtor's right to terminate the Agreement directly, it does refer to the Debtor's termination rights in two different sections. First, the section of the Agreement labeled "*III. Nature of this Agreement*" provides: "There shall be no return of deposit, under any circumstances, should the Rental Agreement be terminated prior to the end of the automatic renewal term whether *by request of the Customer* or by CTE for just cause." (CTE Ex. 1 at 2) (emphasis added). Second, the section of the Agreement titled "*IX. Rates*" provides: "The Customer agrees to automatic renewal of the rental period for 208 weeks. *Customer must notify CTE in writing if Customer does not want to continue renewing the Rental Agreement.*" (*Id.* at 5) (emphasis added). The Court finds that these provisions evidence the Debtor's right to terminate the Agreement within the meaning of MISS. CODE ANN. § 75-1-203(b). The Court also notes that the Debtor did not proffer any evidence (testimony or otherwise) or legal authority at the Hearing regarding the Debtor's right, or lack of a right, to terminate the Agreement early. Because the Court finds that the Debtor has the right to terminate the Agreement early, the bright-line test is not satisfied and it is unnecessary for the Court to evaluate whether any of the Residual Value Factors are satisfied.

Assuming *arguendo* that the Debtor did not have the right to terminate the Agreement early, a quick glance at the Residual Value Factors reveals that the second prong of the bright-

line test is not satisfied either. As for the first factor, the Debtor did not meet his burden by providing any evidence regarding the economic life of the Freightliner, and, thus, the Court is unable to determine whether this factor is satisfied. As for the second and third factors, the Debtor is not bound to renew the Agreement, he is not bound to become the owner of the Freightliner, nor does he have the option to renew the Agreement upon compliance with its terms. Finally, regarding the fourth factor, as the Court explains later in this Opinion, the Debtor has not satisfied his burden in establishing that the purchase option price is nominal. For these reasons, even if the Debtor did not have the right to terminate the Agreement before the end of its term, the Debtor has not met his burden in establishing that the second and remaining prong of the bright-line test is satisfied.

### 2. Whether CTE Retained a Meaningful Reversionary Interest in the Freightliner

As a result of the bright-line test in MISS. CODE ANN. § 75-1-203(b) not being satisfied, the Agreement does not create a security interest *per se*. The Court, however, must now examine the facts and circumstances of the transaction between the Debtor and CTE and determine whether CTE retained a meaningful reversionary interest in the Freightliner at the end of the term of the Agreement. "If there is a meaningful reversionary interest—either an up-side right or a down-side risk—the parties have signed a lease, not a security agreement. If there is no reversionary interest, the parties have signed a security agreement, not a lease." 4 JAMES J. WHITE, ROBERT S. SUMMERS & ROBERT A. HILLMAN, UNIFORM COMMERCIAL CODE § 30–3(c)(3)(d) (6th ed. 2014).

The Court agrees with the courts that have analyzed the following factors when determining whether a lessor retained a meaningful reversionary interest in a transaction: (1) whether the option price is nominal and (2) whether the lessee had the right to acquire equity in

the goods. *See e.g., In re Ladieu*, 2011 WL 748566, at *15; *In re Warne*, 2011 WL 1303425, at *5; *In re WorldCom, Inc.*, 339 B.R. at 70-74; *In re QDS Components, Inc.*, 292 B.R. at 342-45; *In re Bumgardner*, 183 B.R. 224, 228 (Bankr. Idaho 1995); *Kimco Leasing v. State Bd. of Tax Comm'rs,* 656 N.E.2d 1208, 1218 (Ind. T.C. 1995).

Here, the Court finds that the Debtor has failed to meet his burden by establishing the satisfaction of either one of these factors. Regarding the first factor, the proper method to assess whether an option price is nominal is to evaluate the price in relation to the fair market value of the goods in question or the lessee's reasonably predictable costs of performing under the agreement in question *as anticipated* by the parties at the time the agreement is signed. *See* MISS. CODE ANN. § 75-1-203(d), (e); *see also In re Ladieu*, 2011 WL 748566, at *14 ("Whether the Court looks at FMV Standard or the Option Price/Performance Cost Test, the focus must be on the value or cost anticipated at the time the agreement was signed.") (citations omitted); *In re Uni Imaging Holdings, LLC*, 423 B.R. at 417 ("In determining whether 'additional consideration' is nominal, the Court is to examine . . . the expectations of the parties concerning the projected value of the equipment at the time they entered into the agreement, rather than the actual value at the conclusion of the term. In other words, '[f]oresight not hindsight controls.'") (citations omitted) (quoting another source); *In re WorldCom, Inc.*, 339 B.R. at 67 ("Thus, in assessing the nominality of a purchase option vis-à-vis the FMV of the goods, the proper figure to compare [the option price] with is not the actual fair market value of the leased goods at the time the option arises, but their fair market value at that time *as anticipated* by the parties when the lease is signed.") (quoting another source); *In re QDS Components, Inc.*, 292 B.R. at 340 n.17 ("Thus, it is the parties' projections at the outset of a transaction—of the expected fair market value of the leased goods, their remaining economic life, if any, at lease end, and the cost

of continued performance under the lease agreement if the option is not exercised—that must be examined.").

Under the terms of the Agreement, the Debtor was entitled to exercise the purchase option only after he finished making the 208 weekly payments under the Agreement. (CTE Ex. 1 at 8). The Debtor did not present any evidence (testimony or otherwise) as to the *anticipated* fair market value of the Freightliner at the time the purchase option arises (208 weeks, or four (4) years, after the Debtor signed the Agreement) or as to his reasonably predictable cost of performance under the Agreement if he did not exercise the purchase option. The only evidence the Debtor provided as to the value of the Freightliner was testimony that the Freightliner was, in his opinion, worth $30,000.00 *at the time he signed the Agreement*. As a result, the Debtor did not satisfy its burden of establishing what the original parties to the Agreement anticipated at the time they entered into the Agreement, and the Court, therefore, is unable to make a determination as to nominality of the purchase option price. *See In re Ladieu*, 2011 WL 748566, at *14; *In re Uni Imaging Holdings, LLC*, 423 B.R. at 417-18; *In re WorldCom, Inc.*, 339 B.R. at 67-68; *In re QDS Components, Inc.*, 292 B.R. at 335-38.

As for the second factor, whether the Debtor had the right to acquire equity in the Freightliner, courts have stated that "[i]n asking whether the lessee has an equity interest, the Court is essentially examining whether the contractual option price was set lower than the predicted FMV of the goods in order to reflect the equity interest in the goods that the lessee had previously accumulated, presumably by paying more in 'rent' than the parties would have agreed to in the absence of an intent to allow the lessee to accumulate such equity." *In re WorldCom, Inc.*, 339 B.R. at 73 (analyzing *In re Bumgardner*, 183 B.R. at 224); *see also In re Warne*, 2011 WL 1303425, at *6; *In re Ladieu*, 2011 WL 748566, at *15. Again, as was the case in the

Court's analysis of whether the option price was nominal, the determination of whether the Debtor had the right to acquire equity in the Freightliner requires evidence of the fair market value of the Freightliner as predicted by the parties on the date they entered into the Agreement. *See In re Ladieu*, 2011 WL 748566, at *15; *In re WorldCom, Inc.*, 339 B.R. at 73. The Debtor, however, did not present any evidence regarding the fair market value of the Freightliner as predicted at the time he signed the Agreement or any other evidence regarding his right to acquire equity in the Freightliner. The Court consequently finds that the Debtor did not meet his burden in establishing that he had a right to acquire equity in the Freightliner.

As a result of the Debtor's failure to establish that the price of the purchase option in the Agreement is nominal or that he had the right to acquire equity in the Freightliner, the Court finds that the Debtor has failed to meet his burden in showing that the facts and circumstances of the transaction demonstrate that CTE did not retain a meaningful reversionary interest in the Freightliner at the end of the lease term. Therefore, the Court finds that the Agreement is a "true" lease under Mississippi commercial law.

**B.      Motion for Relief**

Having found that the Agreement constitutes a "true" lease, the Court now turns to the Motion for Relief. Generally, a debtor, subject to the Court's approval, may assume or reject any unexpired lease. 11 U.S.C. § 365. If, however, the lease has been terminated prior to the commencement of the bankruptcy case, there is nothing left for the debtor to assume. *See e.g., In re Sanford*, No. 04-13648, 2005 WL 629022, at *4 (Bankr. M.D. La. Jan. 31, 2005); *In re CVA Gen. Contractors, Inc.*, 267 B.R. 773, 778-79 (Bankr. W.D. Tex. 2001); 3 COLLIER ON BANKRUPTCY ¶ 365.02[2][e] (16th ed. 2014) (collecting cases). Further, courts have held that a debtor's inability to assume a lease constitutes "cause" for relief from the automatic stay under

§ 362(d)(1). *See, e.g., In re Ward*, No. 12-60662-13, 2012 WL 2501182, at *4 (Bankr. D. Mont. June 28, 2012); *In re Burch*, 401 B.R. 153, 160 (Bankr. E.D. Pa. 2008); *In re Sanford*, 2005 WL 629022, at *4; *Bell v. Alden Owners, Inc.*, 199 B.R. 451, 462 (S.D.N.Y. 1996). Therefore, it is necessary for the Court to determine whether the Agreement was effectively terminated prior to the commencement of the Bankruptcy Case. If so, the Debtor is unable to assume the lease under § 365 and "cause" exists to terminate the stay under § 362(d)(1). If the Agreement was not terminated pre-Petition, then the Debtor will have the option to assume the Agreement pursuant to the terms and conditions of § 365. *See* 11 U.S.C. § 365.

Turning to the Agreement, the Court finds that it was terminated prior to the commencement of the Bankruptcy Case. The section of the Agreement titled "*III. Nature of this Agreement*" provides: "[T]he Customer shall have the responsibility of meeting all requirements of this Rental Agreement and Rental Agreement may be terminated by CTE at its discretion for failure to comply with Rental Agreement terms." (CTE Ex. 1 at 2). Further, the Section of the Agreement titled "*V. Payment and Maintenance Responsibilities*" provides: "Rental payments must be paid on time; there is no 'grace period' for any rental payment. . . . Any payment that is not received by the due date shall be considered delinquent and this Rental Agreement will be considered in default." (*Id.* at 3).

At the Hearing, the Debtor testified that he stopped making his payments and, thus, was in default, prior to October 22, 2014, the date CTE sent the Termination Letter to the Debtor. The Termination Letter contains the following language: "You are hereby notified that the above referenced Commercial truck rental agreement is Terminated by reason of your default of the terms set forth in section V, "Payment and Maintanance [*sic*] responsibilities." (CTE Ex. 2 at 1).

The Court finds that CTE effectively terminated[6] the Agreement, in accordance with its terms, on October 22, 2014, which is nearly three (3) months before the Debtor filed the Petition on January 12, 2015. The Court notes that the Debtor did not provide any evidence or legal authority at the Hearing regarding whether the Agreement was terminated pre-Petition. Since the Court has found that the Agreement was terminated pre-Petition, it follows that the Debtor may not assume the Agreement under § 365, and, thus, "cause" exists under § 362(d)(1) to terminate the automatic stay as to CTE and the Freightliner so that CTE can pursue the Replevin Action. In addition, the Court also finds that the Debtor should amend the Plan to treat CTE consistent with the Court's judgment in this Opinion within fourteen (14) days from the date of this Opinion.

As for CTE's request for attorney's fees, recovery of attorney's fees under the Bankruptcy Code is governed by the "American Rule," which provides that the Court generally does not assess attorney's fees against a losing party in the absence of statutory authority or an applicable and enforceable contract provision. *In re Nair*, 320 B.R. 119, 124-25 (Bankr. S.D.

---

[6] The Mississippi version of Article 2A of the UCC distinguishes between "termination" and "cancellation":

> (1) On *cancellation* of the lease contract, all obligations that are still executory on both sides are discharged, but any right based on prior default or performance survives, and the cancelling party also retains any remedy for default of the whole lease contract or any unperformed balance.
>
> (2) On *termination* of the lease contract, all obligations that are still executory on both sides are discharged but any right based on prior default or performance survives.

MISS. CODE ANN. § 75-2A-505(1), (2) (emphasis added). This distinction does not affect the outcome here as both "termination" and "cancellation" discharge all executory obligations, leaving no obligations or interests to be assumed. *Lamar v. Mitsubishi Motors Credit of Am., Inc. (In re Lamar)*, 249 B.R. 822, 829 n.6 (Bankr. S.D. Ga. 2000) (analyzing substantively identical provision of Georgia commercial law). The use of the word "termination" in this Opinion does not indicate whether or not "the cancelling party also retains any remedy for default of the whole lease contract or any unperformed balance." *See id.*

Tex. 2004), *aff'd*, *Triad Fin. Corp. v. Peake (In re Nair)*, 202 F. App'x. 765 (5th Cir. 2006) (unpublished); *see also Summit Valley Indus., Inc. v. Local 112, United Bhd. of Carpenters and Joiners of Am.*, 456 U.S. 717, 721 (1982). In the Motion for Relief, CTE did not cite any authority or applicable contract provisions entitling it to an award of attorney's fees. Even if there is authority entitling CTE to an award of attorney's fees, CTE did not mention attorney's fees at the Hearing, much less proffer any evidence regarding its attorney's fees or the reasonableness of such fees. Therefore, to the extent that CTE is requesting an award of attorney's fees, that request is denied. *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995).

## Conclusion

For the foregoing reasons, the Court finds that the Agreement is a "true" lease under Mississippi commercial law that was terminated pre-Petition by CTE. As a result of the Debtor's inability to assume the Agreement under § 365, "cause" exists under § 362(d)(1) to grant the Motion for Relief.

IT IS, THEREFORE, ORDERED that the Motion for Relief hereby is granted as set forth herein.

IT IS FURTHER ORDERED that the Debtor hereby shall amend the Plan to treat CTE in a manner consistent with the Court's judgment in this Opinion within fourteen (14) days from the date of this Opinion.

##END OF OPINION##